As I was waiting my turn, it occurred to me that if Charles Dickens had characterized what this case is, he would have called the case a tale of two juries. In this case, we had two juries. We had the jury that jury number one was excluded from, finally, and replaced by an alternate juror, which became a reconstituted jury, which returned a verdict of guilty. I believe that the evidence, the record of this case, demonstrates that a number of things, including the fact that the second jury, the second constituted was not an impartial jury, because that jury had gone through the process of, I think it was four days of deliberation before coming to the conclusion that 11 of them believed, beyond a reasonable doubt, that Mr. Parker was guilty of first-degree murder. They had then gone through the process of being made aware that there was investigation about whether or not the sole bone pulled out, juror number one, was in violation of her duties, was in violation of not discharging her duties. You know, we are familiar with the facts. What I'd like to know is what are we reviewing here? We are obviously reviewing the decision of the district court, but we have to look at everything through the lens of AEDPA, right? This is a case covered by AEDPA? AEDPA? Your Honor, I'll tell you the truth. I didn't quite understand what you said. This is a case covered by AEDPA. You familiar with AEDPA? AEPPA. I think it probably is, yes. Yeah. So we have to look at the case through that lens, and so what we need to look at is the decision of the State court that we have to find was unreasonable. Unreasonable determination of facts. Which decision – what is that decision? Which court are we looking at, and where is that decision, and what does that court say on the question of removing juror number one? As far as U.S. Supreme Court precedent, it seems to be a pretty – No, the question Judge Kuczynski asked is which State court decision are we looking at? The court of appeals, the trial court, what decision are we looking at? I think we start with the trial court's decision, and that trial court, I believe, made a – It's not a question of opinion. We look at the last fully reasoned decision of the State courts, okay? And that's what we look at. And that would be the court of appeals in this case, I believe. Okay. And what do they say on the subject? They affirmed – What do they say? What they specifically said about the determination of – to reopen the investigation or the determination of – Yes. Well, as I stand here, I can't tell you. This was juror number one. Let me say, here all the jurors save the foreperson. Reported comments made by juror number one, which clearly demonstrated that she was considering penalty or sympathy. Is that accurate? Arguably accurate? Yes. All the jurors save the foreperson. Reported comments made by juror number one, which clearly demonstrated that she was considering penalty or sympathy. I believe it's an accurate statement that the jury was hung 11-to-1 and that juror number one was a sole holdout, and that the entire jury was aware of that. I apologize. I really have a little difficulty hearing. I'm sorry. What we're trying to find out is what fact-finding are we reviewing? And since you said you didn't know what the court of appeals said as their fact-finding, I tried to read you what seemed to me to be their summarizing fact-finding so that we could consider whether or not that fact-finding is an unreasonable finding or not. I think it was a reasonable fact-finding, objectively unreasonable, for the trial court to, first of all, after concluding that juror number one was discharging her duties properly, without being given any other factual information other than jurors seven and ten later saying the only way we get a verdict in this case is if you excuse juror number one, basically. That it was unreasonable for the court, the trial court, to then conclude that we should reopen the investigation and develop allegedly new facts and come to a different conclusion. It was unreasonable, objectively, I believe, for the court of appeals to later affirm that process when the case was going to direct review in the court of appeals. I think that was an objectively unreasonable determination of fact. You didn't handle this case in the State courts. You did not handle this case in the State courts. I'm awfully sorry. You didn't handle the case in the State court. How did you get this case? Did I handle this case in the State court? Yeah. No, sir. No, sir. How did you get this case? How did I get this case? Yes. I was appointed by the Ninth Circuit after this Court issued the Certificate of Appealability. You were appointed by the Ninth Circuit, I see. Okay. Anything further? No. Would you like to save your time for rebuttal? I have a question that I'll try to answer. I'll try to hear it. Well, aside from the fact-finding questions here, which we're not getting too far in, what is the Federal constitutional theory that underlies your case? The one, he was denied, or Parker was denied an impartial jury because the manner in which the second jury was brought about was not an impartial jury. Two, that the jury was removed. Because a juror was removed, you say? Yes. Had juror number one not been removed, there would have been no. . . If in fact there was an objectively reasonable finding of fact that the juror would not follow instructions, would not discharge her duties, I'll concede that under those circumstances, if that conclusion is properly reached in a proper process, that the removal of the jury at that point is not valid. You're saying there are two different points, one, that it was not the correct fact-finding, and two, it was not reached by the proper process? I think it's both. Okay. I think that Berzan was trying to get at the second point. What is your theory as to why it was not a proper process? Well, the process started with making inquiry, not just with what juror number one said or did in the jury room. It also included an examination of that juror's subjective thought process, which is not a proper process. It later included an examination of other jurors' thought processes, other jurors' conclusions as to what juror number one, what was motivating her, rather than just an examination of what did juror number one do or say, which I think the examination is limited to if there is to be an examination. And further, I think it's just at the end of round one, at the end of the first day of this process, the trial court said to inquire any further, and this is a trial court who's right there on the scene, to inquire any further is going to be invading the province of the jury. And yet the very next day, when it appeared that, yes, indeed, there will be no verdict in this case unless juror number one is removed, the trial court was willing and did, in fact, engage in further examination, which I think was not a proper, was not a sanctioned procedure to use. And I think it's a violation of Mr. Parker's right to a fair trial. Thank you. Thank you, Kaye. All right. The Deputy Attorney General, Matthew Mulford, on behalf of the Warden, may it please the Court. The trial judge here properly made credibility findings. The juror one could not follow the law, specifically because she was considering penalty or punishment unsuitable under California law. What do you say are her credibility findings? I think there is no other way to fairly describe the Court's findings before the jury was removed from the panel. He originally – she said that she could do this fairly. He originally believed her. Correct. He had no further information when he decided to go into further investigation. Respectfully, I'm sorry? Respectfully, I would disagree with that point. Well, he had two jurors who said we might have not been hung if you had removed the juror or if you answered the note or something like that, but no information. In our view, that is additional information. Well, he already knew they had signed the note the first time, so – and all he was told the second time was that they continued to believe that she – what they said the first time. That's correct. So there was no further information. Well, first of all, I respectfully disagree. I understand the Court's point. The Court – the trial court here did review the law before the next day. I'm sorry? The judge reviewed the law and made an extensive – But then you're agreeing there was no further information. He just reviewed the law. I think the fact that two additional jurors reemphasized the point that had been made previously can be seen. What did they reemphasize? I'm sorry? What exactly did they reemphasize? The fact that a juror was not following the law. So the point would be the same, and I would agree with the judge's question on that, but the fact that more jurors – But that's a conclusion. The juror's not following the law. That's not a fact. I think it would be a mixed question of fact and law, and it would certainly – It doesn't mean anything, it's not following – you know, you think a juror coming out and saying, I believe juror number one is not following the law, you think that's enough to make any kind of reasoned judgment as to – on that point? Let's say 11 jurors all point to one juror and say, look, she's not following the law. That would not be enough. Would not be enough. It doesn't matter how many people say it. Right. They'd have to come forward with some evidence, some fact, from which we could say that constitutes a not following the law. And what was it here that says she's not following the law or she wouldn't follow the law? What were the underlying real-life facts? Initially, it was the statement reported by the foreperson that she could not convict Parker of first-degree murder. Well, what does that mean? I mean, maybe she wasn't convinced – maybe she wasn't convinced there was premeditation deliberation, the malice of forethought. Well, I mean, a juror who believes that evidence is insufficient to sustain a charge of first-degree murder would say that, no? Correct. But there – In fact, you'd expect him to say nothing else. You wouldn't expect him to say, oh, I don't think there is – even though I find there was no premeditation deliberation, I might vote anyway. I mean, that would be not following the law. Right? I think I have – So what else have you got? First, let me – premeditation and deliberation were not at issue in this case due to the felony murder rule. So I think – Well, I'm just giving you – I'm just giving you an example. I mean, they – there was no stipulation that these are – that there was first-degree murder, right? This was a trial. Correct. So a juror presumably had findings to make on various elements of the crime. In some circumstances, I agree with the Court's question that the statement of first-degree murder – I mean, the fact that she says I couldn't convict of first-degree murder could just mean – be an assessment of the – of what she believes to be the state of evidence. Yes, it could be. But in light of the evidence presented here and the – Okay. So what else have you got? I mean – First of all, what else did you have before he went to the second investigation and what did you have afterwards? Before the investigation, it is the statement, it is the comments of the foreperson that were disagreed with by Juror 1 in question, and the judge said there is some ambiguity here, which I think follows up with the judge's question. Well, I thought the foreperson basically said that she said this thing and she agreed she said this thing. Right. And then she explained what she meant by it. Right. And it was at least an ambiguous statement. Yes. So at that point, he had – would you agree that at that point to have removed her would have been improper? Do we have more? At that point, the trial judge, in our view, made a credibility determination that there was not sufficient evidence that she had not been following the law. When reprompted by more jurors the next day, emphasizing the fact that the judge's initial determination of credibility may have been incorrect, and if the juror actually was not following the law, I think the judge was entitled under California laws to have removed her. What happened the next day that would have supported the finding that she wasn't following the law? Well, then they asked all ten of the remaining jurors if they had not spoken to the previous day. Which obviously has its own downsides in terms of a jury system. Right? I mean, that there are problems with it, just the inquiry itself. In some respects of the inquiry itself, I suppose, at least in science, being able to look at it may change it, yes. I think that that does point to something that we do not want to do in every case. But when prompted by the law. Don't forget my question. I'm sorry. I don't recall the question, Judge. The question is, what was the evidence on the second day? Thank you very much. When they talked to each of the ten jurors, I hope I've answered your question, but when they talked to each of the remaining ten jurors, every single one of them reiterated the initial point that she was considering, she was unable to give it a first degree murder, so she confirmed the initial four-person statement. And then Juror No. 10 said she made comments about the death penalty, which would specifically refer to penalty. Juror 11 said she was worried where she could convict if the sentence was not severe, which, again, considers penalty or punishment. Juror No. 2 said she was worried about what was going to happen to him next along the lines of will he be spending the rest of his life or receive the death penalty, which is presumably a punishment. But in terms of actual statements, in other words, a lot of it was impressionistic, but in terms of what they said she said as opposed to what they took from what she said, which my reading of the record is that none of them or maybe one of them unambiguously said that she said something about the penalty. That's not how we read it. And then we, the trial judge here took great care, in our view and in the record of the view of the State Reviewing Court, to only solicit statements. Most of the jurors made comments about, well, I can't remember an exact quote, but her statements were something to the effect of, something to the effect of considering the death penalty, something to the effect of considering a sentence that wasn't severe. Sotomayor, which one made statements that specifically said that she said something about the death penalty or about punishment? I think juror number 10, because this is the second supplemental excerpt of the record provided by Mr. Wadley. Juror 10 at page 140 and 148. I have juror 12 at page 181 and 182. I have juror number 4 at page 168 talking about the length of time he would spend in prison. I think at page 158 and 160, juror 2 talks about a life or the death penalty. So these are the two. Well, the quote I have from juror 2, it may not be the only one, is she was not convinced beyond her reasonable doubt, and she just didn't see that she could put, because of that, she could not put anyone in prison for life and vote for the death penalty. Well, that's certainly a statement consistent with instructions. I'm not sure I follow the question. I think what the court said. Well, I'm trying to say, yes, she mentioned the death penalty, but in the context of the fact that she was not convinced beyond her reasonable doubt. Well, in California, I think the juror not being convinced by a reasonable doubt by itself is not precluded. You know, the California courts, unlike the Federal courts, have expressly held that that information is not, you know, forbidden from the trial judge from considering. So it's a lot. What, that you're not convinced beyond a reasonable doubt? That's not a reason? It is a reason. The Federal courts have said, and this Court. It's hopefully a legitimate reason, even in California, for a juror not to vote to convict, because she doesn't, she's not convinced beyond a reasonable doubt. Certainly. I think it is, and I don't think anything in the record suggests otherwise. Well, I think it is. She said I couldn't give a death penalty without being convinced beyond a reasonable doubt. Would you want her to give a death penalty if she weren't convinced beyond a reasonable doubt? Of course not. But in this case, we were only considering the subject of guilt and we hadn't reached the subject of penalty. But that doesn't matter. I mean, you pointed to juror number two as an example of somebody who said that she considers a death penalty. And what she actually said was that she considered, that she wasn't, what juror number two said, juror number one said, was that she wasn't convinced with, beyond a reasonable doubt, and therefore would not consider the death penalty. She could not find someone guilty who's going to be put to jail for the rest of the President's life or possible death. In our view, that that is, that's considering penalty in a forum where the juror was not entitled to. Because of that, because you all have not proved this to me, are deliberations beyond a reasonable doubt. Because of that, she could not put anyone in prison for life or vote for the death penalty. She could not find somebody guilty. I mean, I don't understand. Considering the gravity of the, of the, of the punishment and saying, look, you know, I, this has, you know, I can't let go of this. It's not been proven to me beyond a reasonable doubt and weighs very heavily on me that this is not just three days in jail. We're talking about somebody putting, being put in prison for the rest of his life or maybe even put to death. You, you would not expect a juror to have consciousness of the, of the gravity of the, of the decision she's making in, in, in articulating why, why she couldn't possibly go along when the, when reasonable doubt hasn't been proven to her? I, I, I, I, I. Respectfully, we see two different points in that question. You know, the first being, has the case been proven beyond a reasonable doubt to the constitutional law? The second point, though, as to whether or not this person will be punished for any length of time is simply not relevant. Well, the question that, but the question that Kuczynski asked is, isn't it relevant? You know, are you taking an abstract scientific view that you apply reasonable doubt in precisely the same way to the question of is it all right for me to leave the room for 10 minutes as to the question of should I execute somebody? Or can you have a graver amount, graver quantity of reasonable doubt? Do you, do you take it more seriously? If it is all right to take it more seriously, the question of reasonable doubt, when you're executing someone, than if you're sentencing somebody to a day in his home, if that's all right, then why is it not all right to mention it? I have reasonable doubt that I can make so serious a decision for these consequences based on that evidence. Why is there something wrong with that? I'm not sure if there are multiple standards to begin with for reasonable doubt. Well, is that a reason to remove somebody from a jury if the juror were to say, you know, I really have to take this very seriously, and reasonable doubt is something that weighs on me very heavily, far more in this kind of a case than if I were being asked to say to vote for a misdemeanor speeding ticket. Those concerns are far more important in the next phase of the trial, where the jury is exposed to the jury. That may be, but is it a reason to remove somebody from a juror if that's his decision? Particularly not just somebody. Somebody that the trial judge knows is the lone holdout juror for acquittal, that if that person's removed, the chances of getting a conviction are vastly increased. This is not a black box. This is not a situation where the judge says, gee, we are, where the jury says we're hung up. We're not going to tell you which way we are or how many of us are on each side. You know, it could be three people. It could be five people. It could be 12. It could be 7 to 5. It could be 9 to 3. They say it's 11 to 1, and what's more, they say it's 11 to 1 for conviction, and whatever they say, and it is this juror, the one that's holding us for acquittal, that, you know, so the judge and everybody else in the courtroom knows that if that juror is removed, the skids will be greased towards a conviction. I think the record shows that defense counsel was the person that asked the court to make the determination as to the numerical division. Under California law, the instructions to jury were given initially, and the trial court took pains to reiterate. So nobody's blaming that, but at that point, the trial court knows, and the trial court knows that the decision it makes, you know, having this knowledge, it removes the juror. It doesn't have to have an extremely good reason. I mean, something like the juror saying, oh, I will not follow the law. I'm sorry. You know, I've listened to your instructions. I will not follow it. Or even the jury room, having the juror say, I cannot follow the court's instructions in my conscience, which does happen occasionally. Or you have a situation where the juror says, you know, I've talked to God, and God told me that the judge's instructions are no good and that I need to vote this way. That happens, but this is not that case. Respectfully, we disagree. Respectfully, the court here, I think, gave a figure that, you know, 99.9 percent of the time, a jury split 11-to-1 is a jury split 11-to-1, and it's retried. But here, the judge considered all the evidence, considered all the evidence in two separate days of hearing, took all the jurors aside and listened to what they had to say and was as careful as he could do, found that this juror was, in fact, considering the subjects of penalty and sympathy. And I think Alfred and Lauda had an accessible decision. In the sentence I read before, the appellate court said, here, all the jurors, save the foreperson, reported comments made by juror number one, which clearly demonstrated that she was considering penalty or sympathy. That's just wrong. Am I right about that? Many of them said she said what she said she said, i.e., I can't convict of first-degree murder. That certainly doesn't clearly demonstrate that she was considering penalty or sympathy. Then there's the statement I read before from juror number two, which certainly doesn't demonstrate that. So the court of appeals was operating on an erroneous, a clear, an unreasonable factual finding. Is that not right? I have to disagree. I don't think that's correct. I think each juror said something that at least gave an inference. That's not what they said. They said all the jurors made comments that clearly demonstrated that she was considering penalty or sympathy. That's wrong. Well, perhaps the word clearly. I think inferentially each juror said something other than juror one herself. Actually, she admitted the comments. So I think each juror said something that at least could lead to the inference as a part of the problem. Suppose we thought that was wrong. Let's go back to the advert question. Suppose we thought that was an unreasonable finding of fact and that it's the pertinent finding of fact. Do we just reverse on that for that reason or what? What do we do next? Do we then de novo look at the constitutional issues ourselves? This is a tough question. First of all, when Judge Kaczynski started this question off with the question to Mr. Watley, first of all, the language of the AEDPA, I guess, to clarify, talks about the results of the State court proceedings. So we're looking at the sum total of all the decisions made by the State courts and not, I would submit, necessarily and only the last fully reasoned State court decision. So assuming for the sake of argument that the court of appeal may have used the word clearly in a matter that's not fully supported by the record, I still think that I still think that the Court of Appeal. It's unclear. Well, the dissenting judge certainly was troubled by this more than the majority. Some of the dissenting judges' views. Well, he said, I would reverse the conviction and remand for kidney trial. I believe there was insufficient evidence in the record as a demonstrable reality of Juror No. 1's inability to perform her duty. He said that. The two judges disagreed. And the California Supreme Court denied review the second time. But it certainly weakened the force of the State court decisions, weakened by the strong dissent from one of their own, saying. I've looked at all this evidence and it doesn't amount to much, right? I don't know if weakened is the right constitutional or statutory question for us. The question is, is the result unreasonable? And the fact that the trial court. It's more likely to be unreasonable if one of the Court of Appeal judges disagrees, right? Perhaps, yes. But there have been other states and other Federal circuits and other cases that come down essentially the same way, assuming the initial determination was correct. Am I correct? This seems to be quite a practice in the California criminal cases these days, to remove the one juror that's disagreeing? I don't. I'm not familiar with any such practice. The judge may be referring to there was a prior and now no longer given instruction that encouraged jurors to report misconduct. I've seen several cases like this recently. California is a big state and you have lots of jurors. I've never heard of this in other states where the one juror that wants to acquit somehow finds himself no longer on the jury. That's not how we would characterize the record, Your Honor. Do they ever remove the one juror who wants to conduct? I don't know that. But that does point to, you know, the constitutional question. Is it ever permissible to remove a minority juror? You know, I think as long as the Court didn't know, which of course is not the case here, but I don't think there would be anything under the Constitution prohibiting a practice where. Well, that's a very good question and an interesting one. So you're trying to – you're looking at the fact that there's no constitutional requirement of a unanimous jury. You're saying that even after the deliberations start, you could simply disregard one of the jurors. I wouldn't go that far, but there's some truth in the question, yes. But there also – the Supreme Court law on jurors is interesting because you don't need a unanimous jury, but you can't have a coerced jury. You can't have a – it has to be an impartial jury. Yes. What about secrecy? Do you think you could – you could – consistent with the Constitution, have open deliberations from jury? I don't think so. Probably not. And you couldn't do it in California under State decisions. Well, if you – if State law requires a unanimous jury, then you have to have a unanimous jury under the Constitution, if that's what you've been guaranteed. And we believe that there was a unanimous jury in this case. They removed the juror that could not follow the law. They couldn't just remove the jury – the juror for no reason and say, well, it doesn't really matter under the Constitution whether the jury's unanimous. Well, I think a State statute might provide that power, but, you know, not as – not as the law currently requires. No, no. I mean, in the absent truth statute. Correct. That would be probably arbitrary and you'd probably violate due process more than anything else. But, again, that's not how we read this record. We have a trial judge here that took great pains to fairly judge all of the jurors' statements about another juror and eventually concluded that one juror could not follow the law and remove that juror. And the judge did so very reluctantly. And I think the State courts were deeply troubled by that. It was reflected by dissenting justices' opinion. But for this Court, it was not unreasonable. In the course of doing so, he certainly put some pressure on the secrecy of the jury deliberations. Yes. I think that's fair. They weren't very secret at that point. Correct. But, again. He put some pressure on the coercion value. Yes. On the impartiality value, because you had a juror who – it was at least debatable what her view was. And so in terms of the sort of deeper jury values that the Constitution protects, this system, which is to some degree sanctioned, as I understand it, by the Cleveland decision, which encourages these investigations, puts a fair amount of pressure on the underlying constitutional values, rather than, as the Federal rule says, that you just don't get into this unless you have a really good reason to think that there is a juror who is not following – is not deliberating properly, not simply ambiguous reason. Those are all valid considerations and concerns. California has resolved the question in favor of making these inquiries. And I think this Court has, in Perez v. Marshall, essentially said that California retains the right to do that. What about the Sanders case in this Court, which was a habeas? I don't think – Why is that awfully close in here in terms of being quite similar, actually? No, I disagree. I think the – well, the reason for the underlying dismissal of the juror, which was ultimately held by this Court to be improper, concerned statements she made on what was happening during the secrecy of deliberations. And there were some issues as to whether the prosecutor had not appropriately challenged the juror in Gwadir, and it followed up at that time. And so that seems to me to be the basis. But in terms of what we're discussing now, that is, the sort of underlying constitutional – what's Federal here and what's constitutional and what isn't, it seems to me that it certainly assumes a fair amount of constitutional law with regard to not removing jurors, unless there's a very good reason, at least that much. Well, I mean, to that extent, we have the finding by the trial judge as affirmed by the Court of Appeal that the juror was violating the law and improperly was removed. Unless there are further questions, I think that is enough. Thank you very much, counsel. With respect to further questions, I'm also prepared to submit. Thank you, counsel. The case just argued will be submitted. The final case for oral argument this morning is U.S. v. ARCAD. Thank you.
judges: Reinhardt, Kozinski, Berzon